The next case, number 221452, Rachel Langara et al. v. Bayer Corporation et al. At this time, Mr. McCandless, please introduce yourself on the record to begin. Good morning, Your Honor. It's Roy McCandless for the Plaintiffs, Rachel and Hans Langara. I'd like to reserve one minute for rebuttal, please. You may. This is a case about personal jurisdiction where the district court below found that there was no personal jurisdiction over the defendants, the Bayer defendants, with regard to this products liability case. My clients back in 2007 were residents of Connecticut. Ms. Langara was administered the MagnaVest, which is the agent that, with regard to the MRI, is provided to someone to help the process pick up what's going to be seen on the imaging studies, and she had an allergic reaction to that. She had some medical care in Connecticut with regard to that initial allergic reaction, and then sometime later in 2014, my clients moved to Massachusetts, where they presently reside. They're both dentists, and that was a choice made because of their professional desires, not because of any forum shopping. Ms. Langara continued to have various serious health issues that she experienced in Massachusetts, and it wasn't until 2017 when she saw an expert in Toledo, Ohio, Dr. Grubb, that he made the connection between the gadolinium residing in her bones and in her brain and in her body and the negative effects that she continued to experience and continues to experience to this day. Therefore, her cause of action against Bayer did not arise until this point in 2017, while they were residents in Massachusetts. They brought lawsuit here in Massachusetts against the Bayer defendants in Superior Court that was moved to the District Court, removed by the defendants. The defendants moved to dismiss based upon personal jurisdiction, and we had a hearing, telephonic hearing in front of Judge Woodlock, and he granted that motion to dismiss. We believe that the judge erred for three reasons. First, under Massachusetts Law, Section 38, 223, Section 38, there is longstanding precedent that when a business like Bayer has a continuous and longstanding relationship in the Commonwealth, that they are subject to jurisdiction outside of the long-arm statute. And in the analysis that has been taking place with regard to those issues, the questions relate to, number one, do they do business here, and I believe it's undisputed that they do do business based upon what we were able to discover and present to the judge. And then number two, the question goes to very similar to the minimum context in the worldwide Volkswagen case, is that is there enough context here, minimum context to satisfy the due process analysis, the relatedness, the purposeful availment, and then the gestalt factors about reasonableness. And each one of those factors here are met under Section 38. And I think the reason that it's met is you look at the Ford Motor case that recently came down with Judge Kagan's opinion, where we're talking about the relatedness, the question really is not so much, well, it's not causation, it's more of this looser notion of is there some relation to the cause of action. In Ford Motor Company, that was a car accident case where the automobile was sold, I believe Washington State, and resold to some other place, and then the plaintiffs purchased it and they were driving in Minnesota and had the accident. And there the Ford Motor Company had contested liability, or excuse me, personal jurisdiction, saying, oh, this is tenuous, the context is too tenuous, there's no but-for causation, no causation, and therefore there's no jurisdiction. Justice Kagan said, no, no, all we need to look at is to see what kind of activities were taking place by Ford Motor Company in these jurisdictions. And it was reasonable because of the fact that they advertised these cars and that they had established these relationships with dealers that it was reasonable to hold them and constitutionally valid to hold them at personal jurisdiction in Minnesota for those actions. Here, we have, and my clients have suffered injury in Massachusetts. Now, the district court said you can't just, you know, transfer a cause of action from one state to another by making a move, but he did not take into consideration the type of injury here. This is an injury where Bayer had created this medicine that, unbeknownst to my clients, would reside in a toxic chemical, would reside in their body. She did not know that. She was not warned about that. Bayer did not keep that, did not share that information with her and other people in her position. And it's reasonable for them, Bayer, to know that if they're creating a product like that, that those people could, just like the people who are buying cars from Ford, they're going to feel the effects of the cause of actions, the cause of action related to the harms that Bayer has put them at risk of because of putting this dangerous product into the market, or at least without warning about these dangers, that they're going to have people who are going to suffer the injury, and then because of no invalid reason, you know, no foreign shopper reason, will make them move from one jurisdiction to another. So they would be subject to specific jurisdiction all over the world based on the happenstance of a person, unfortunately, in this condition, moving to that place. That's the import of your argument. No, no, Your Honor. I think it's key that you look at Section 38 in Massachusetts and the case law in that regard because here, it's an addition. It's not just happenstance. It's not just picking Massachusetts because they happen to move there. Yes, they're in Massachusetts, but they also, Bayer has all these contacts that they've maintained over 70 years with this jurisdiction in this commonwealth. And so it's not just the fact that it's happenstance. They did move to Massachusetts for no reason, you know, not for foreign shopping like the folks in the Bristol-Myers-Swibb case that my brother cites. They moved here. The cause of action accrued here because that's when they discovered the causal connection between the poisoning, and it's not just the poisoning, but it remained in her body that they did not know about. Normally, they were told the gadolinium will be, the kidneys will take care of it, and will exit your body. Here, it remained in her body. And so she moved, not because, so she moved, yes, but she felt the effects here. And so she was injured in Massachusetts. It's different from the other cases, the Crocker case. What cases are you relying on for the specific jurisdiction, then? Okay, what case will we have? The Noonan case, number one, where you have the effects are felt within the jurisdiction. There's a recent case from the Merck case. This district court, January 6, 2023, just came down. And I saw it last night as I was doing my last preparation. It came down as well for specific jurisdiction. That was under 3A, 3D in that regard, where if a tort is committed outside the jurisdiction and the defendant actually does business within Massachusetts, then, again, you can hold, there can be specific jurisdiction against them in that regard. My argument, so I do make arguments under 3A and 3D for specific jurisdiction. I also make an argument generally on general jurisdiction. Long shot, I understand it. But the door was opened, I think, by Judge Selya and Chen. At least, not opened, but recognized that it was there. But I really think the key argument is coming back to Justice Kagan and the Ford Motor Company case relatedness tied into the section. So that's the specific jurisdiction? Correct, Your Honor, but the concept is this. Just sticking with the specific jurisdiction and Ford? Yes. You're saying it's just like Ford? I think it's Ford is instructive. It's not just like there's a car accident in Ford, right? And so the accident happened in the jurisdiction and the injury was there. That's a simple case. This is different. I got it. That's the difference. But I think the relatedness question is the thing that you get from Ford and how Justice Kagan is trying to explain it. Thank you. Not so directly. Thank you. At this time, if Attorney DeMolin would please introduce himself on the record. Good morning, Your Honors. Edward DeMolin for the Bayer Defendants, which are the appellees. May it please the Court. In this case, Rachel Langara claims to have used one of Bayer's products in Connecticut over a decade ago. Years later, as counsel noted, she and her husband moved from Connecticut to Massachusetts, a decision that he agreed Bayer had nothing to do with. And years after that, the Langaras sued the Bayer Defendants, which are all non-Massachusetts companies, in the plaintiff's new home state of Massachusetts. The district court correctly dismissed this case for lack of personal jurisdiction. Traditional and clear-cut rules show there's neither general nor specific jurisdiction over the Bayer entities named in this case. First, there's no general jurisdiction over the Bayer Defendants. The Due Process Clause limits jurisdiction over corporate defendants to states where they're headquartered or incorporated. And the plaintiffs agree that none of the Bayer Defendants are headquartered or incorporated in Massachusetts. Nor does this garden variety products liability case include any exceptional circumstances changing that rule. Second, there's no specific jurisdiction. The Supreme Court has said mere unilateral activity of plaintiffs can't create specific jurisdiction, so the plaintiffs can't establish personal jurisdiction in Massachusetts based on their own decision to move to the state years after Rachel Langara claims she used Bayer's product in Connecticut. And none of the other actions that plaintiffs allege Bayer took in Massachusetts have anything to do with this case. Finally, the district court did not abuse its broad discretion in denying the plaintiffs unadorned requests for jurisdictional discovery and amendment of the complaint. The plaintiffs made those requests in a handful of sentences in their opposition to Bayer's motion to dismiss, and they said nothing about what discovery they sought or what any amendment would contain. The district court properly concluded that nothing had been presented to support either discovery or amendment. Let me begin with a more thorough discussion of why the plaintiffs failed to carry their burden to show personal jurisdiction exists over the Bayer Defendants either on a general or a specific basis. To establish general jurisdiction, the Supreme Court has repeatedly said in Daimler and Goodyear and more recently in BNSF that a corporate defendant needs to be at home in the forum state for general jurisdiction to exist. In those cases as well, most recently in BNSF, to be at home, a corporate defendant needs to be headquartered or incorporated in the forum state. As I've already mentioned, the plaintiffs admit that no Bayer defendant is headquartered or incorporated in Massachusetts. The crack that's been left open in the door for an exceptional case is very narrow and this case absolutely does not fit into it. The Supreme Court, in referring to exceptional cases, has referred to the Perkins case. That was a case where a company had its headquarters in the Philippines and because of a war that was going on, it had to relocate the nerve center of its corporate operations to Ohio. In that type of very limited set of circumstances, there could be an exception, but the plaintiffs have alleged nothing like that here, that the Bayer Defendants Forum States have had a conflict of that type and have needed to relocate and indeed there isn't one. Because I think the plaintiffs can't show that the Bayer Defendants are at home in Massachusetts, they have instead turned to an idea that the Supreme Court rejected in BNSF, which is the idea that Bayer's doing business in Massachusetts is sufficient to create general jurisdiction. In the BNSF case, the Supreme Court said that the railroad's doing business in Montana was inadequate to create general jurisdiction there, even though the railroad had 2,000 employees and 2,000 miles of railroad track in Montana. The plaintiffs in this case allege far less in terms of what the Bayer Defendants are doing. First of all, the context that they list to support a general jurisdiction argument, they don't even apply specifically to the defendants here. The one exception to that, which is to say that there is just a list of things that supposedly Bayer did, but there's no connection made to the particular corporate entity sued in this case. The one exception to that is business registration, that they say and produce material regarding the defendants in this case having registered to do business in Massachusetts. But this court has said repeatedly in Kossaboon and Sandstrom in particular that registration to do business is inadequate to create general jurisdiction, and I think it's as well inconsistent with BNSF. Surely, if doing business in a state as extensively as the railroad in BNSF isn't inadequate to create general jurisdiction, then so too is registering to do that type of business. Beyond that, even if the court were to consider the context that plaintiffs mention to support a general jurisdiction argument, they are nowhere, once again, close to the BNSF Railroad's extensive business in Montana that was rejected in that case. On specific jurisdiction, the plaintiffs fail to satisfy their burden either under the due process clause of the Constitution or under the Massachusetts long-arm statute. And to start with due process, which we think is the simplest way to resolve this case, plaintiffs only claim that they currently reside in Massachusetts, not that they used Bayer's product there or that they lived in Massachusetts when they used it. As Judge Woodlock said, cases don't move with plaintiffs, and the district court's opinion is consistent with the ruling in Walden that said that the unilateral action of a plaintiff is inadequate to create personal jurisdiction. I think that we also cite the Goodell case, which is a recent district court case that made a similar ruling in a suit actually involving this same product. Beyond that, the Massachusetts long-arm statute, which, again, is an independent requirement. They have to show both that constitutional due process is satisfied and that the long-arm statute does not give much help. Section 3D, which, as we point out, discusses general jurisdiction, so that can't help them get over the barrier for specific jurisdiction. Section 3A, which is very briefly mentioned in their brief, requires cases to arise out of in-state contacts that a defendant makes. We cite the Goodell and the Skyworks case on that point. And for the same reasons, there's no constitutional due process, having been satisfied that Section 3A isn't either. To respond briefly to my friend's argument regarding Section 38 of the long-arm statute, that is best understood, we think, as a statute regarding general jurisdiction, and the due process requirement hasn't been satisfied here on that score, so that doesn't give any help either. I would mention briefly the Ford case that my friend brought up. I think there are a number of differences between this case and Ford. First of all, the plaintiffs were very differently situated in that case. Those were plaintiffs who were suing in their home states about accidents that occurred in their home states. They weren't people who had had an accident somewhere else and then moved to the forum state. The defendants are very differently situated. One of the most compelling aspects, I think, for the Supreme Court in Ford was that Ford had done a lot of work in the forum states to promote people driving the cars, to help them repair the cars, to establish a relationship with customers regarding the particular products in question. I don't think there's anything here like that. So I think for those reasons, it really is a very different case. And if Your Honors have no questions, we would simply ask this court to affirm the decision below. Thank you very much. Attorney McCandless, please reintroduce yourself on the record. Thank you. Roy McCandless for the Lengaras, the plaintiffs. Two things. Number one, my brother had mentioned that under the long-arm statute, Section 3D, that only applies to general jurisdiction. I believe there's a dispute about that. I know there is because in the Barnes v. Merck case brought down in the district court on January 4, 2023, the court specifically said that Section 3D does apply to specific jurisdiction. We do believe it applies here toward outside, outside of the jurisdiction where the effects are felt inside. So we believe it's jurisdiction under Section 3D, the long-arm statute. Section 38, again, it's not a general jurisdiction statute. And if you look at Walsh v. National Seating Company, 411F, sub 564, Judge Toro, he goes into a great discussion there, finding that indeed an out-of-state defendant that happened to have one office with four employees in the state of Massachusetts was subject to personal jurisdiction. Thank you very much. That concludes argument in this case. Counsel is excused.